All right, our final case for this morning is United States against, I guess he pronounces it Yupa Yupa Yupa Yupa Yupa, what I have been using your honor, Mr. Yupa Yupa, Mr. Schlesinger. Thank you, your honor. May it please the court, Jeff Schlesinger for the appellant, Cristian Manuel Yupa Yupa. This case presents a straightforward question. Does federal rule of criminal procedure 32 mean anything? And if so, what sanctions should be imposed if it's not followed? Mr. Yupa Yupa's case is somewhat, well, as unique as any criminal case is, I guess, but his situation, the sentencing was actually delayed. Well, he pled guilty in July 2018. The procedure in Northern District of Indiana is 90 days to do a pre-sentence report. The pre-sentence reports were done. The judge then has a standard sentencing memorandum procedure, which was followed. All the memoranda were submitted by October. However, the court did not schedule a sentencing hearing until May of 2019. Does the district court judge ever give a reason for the delay? No. Well, Judge Moody is senior judge and he does not sit between, I believe, November and when he returns as a winter residence, I believe returns in May. So there are no hearings held, is my understanding. I filed a motion to set a sentencing hearing in November. Again, we had already done guideline calculations and the calculations were a sentence of 15 months for Mr. Yupa Yupa. 15 to 21? 15 to 21. 15 was the bottom of the guideline, so that's correct. 15 to 21 months. One of the He was going to be detained following his service of a sentence and serve some additional time. I have never gotten an exact figure on how much time that might be before his asylum. He had filed an asylum petition as well before his arrest and he had an immigration. I would be stunned if somebody could have given you a hard number on that. I don't think as of today that's even possible. But my point was to the judge that he was going to do at least 30 days and maybe 90 days or longer in addition, in custody, in addition to whatever sentence the judge imposed. That was one of my reasons for asking for a below guideline sentence. The other reason was that he had an asylum petition pending, which I felt had some compelling facts. Now, I have no way of verifying those facts, but Mr. Yupa Yupa is actually from an indigenous tribe in Ecuador and he had, in his asylum petition, he had alleged that there was a gang threatening him, his father had been killed, his brother had committed suicide, and we did present evidence from a couple officials in Ecuador saying that he had been, in fact, I think he was kidnapped and beaten at one point. Now, I understand that the sentencing judge may not choose to do that, but that's very powerful mitigating evidence if Mr. Yupa Yupa's claim is true and my contention was that we should get to the asylum hearing to determine that. He would be in custody for an additional period of time and if the asylum judge finds that his contentions have merit, then clearly a below guideline sentence would have been appropriate for the judge in the criminal case. So, do you have any authority for the proposition that the Department of Homeland Security and the whole apparatus over there would delay processing the asylum application during the time that a person, Mr. Yupa Yupa here, is serving a prison sentence? I mean, it may not be the most attractive way to present yourself, but do we know that they do that or could you be written over to the immigration court? I was in correspondence with his immigration attorney. I don't handle those cases. He told me that they would not agree to hold the hearing until his criminal sentence was completed. I did inform the criminal court of that as well. There's not a lot of federal law on this and I understand, and I don't want to make his argument overbroad, a delay of six months before sentencing in a case where someone is facing even a five-year sentence may not be significant. Well, I'm glad you're going there because obviously there is the rule of criminal procedure, but this didn't strike me as the case where the delay was notably prejudicial. I mean, that all depended on your hope that maybe the district court judge would sentence him to a time served, eight months, done, let's move on, but the judge gave no indication that that was what he wanted to do and he still winds up with a sentence, I believe, that's in the middle of the guideline range. Correct. He could have gotten a sentence that was lower than that. I mean, it was still, it was, he gets the 18-month sentence at a time that the judge could have given a 15-month sentence or maybe even a little less. But he had, the problem is he'd already served 12 and a half months before the judge opposed the sentence. Well, so the judge could have sentenced him to one more day and it would have been a below guidelines sentence, but the judge doesn't. The judge gives him a sentence in the middle of the guidelines. So where's the prejudice? I can imagine there would be cases if a judge sat on a sentencing so long that maybe you'd get above a guideline range or maybe you'd bump into a statutory problem. I hope judges don't do that, but if somebody did something like that, I could certainly see the prejudice. Well, I did cite in my reply brief the Yelburton case from the District Court of Columbia, in which case, well, there was a 33-month delay in sentencing, but the defendant received a much greater sentence in that case. And the court did issue a letter of apology and a seven-month reduction in his sentence at that point. I'd be happy with a seven-month reduction in Mr. Yupiupa's sentence, but he served it anyway, so it's kind of a moot point. What did concern me, interestingly enough, is when Judge Moody denied my motion for discharge in February, the specific language in my appendix, page 15, defendant employs unsupported presumptions. Defendant presupposes that the date of sentencing will impact and restrict the sentencing that the opposite is true. The sentence the undersigned will impose impacts the sentencing date this court chooses. Now, that concerns me. I don't understand. I do not, myself, quite, I don't understand what he's saying. Well, I think he's, to me, it indicates that he's already decided upon a 15-month sentence, and there's no need to have an earlier sentencing date. But if that's the case, well, first of all, it would be less prejudicial for Mr. Yupiupa simply to impose the sentence without a sentencing hearing, but it also does deny him his right to present any evidence, any changes between that date and the sentencing hearing, or Mr. Yupiupa would have any elocution before his sentencing. Had all of the briefing been completed and the pre-sentence report been completed by the time Judge Moody made that statement? Yes. The sentencing memoranda were completed in October. I filed a motion to set sentencing hearing in November at instruction of the court administrator, and I made regular phone contact. I eventually, in February, which it was two and a half months later, I got an order setting a sentencing date for May 10th, I believe. When I got that, I was somewhat surprised, and frankly, I was not happy, and I researched it and chose, based upon the Betterment case, to move for dismissal at that point. Within 24 hours, I got a decision on my motion denying the motion. So everything was ready for sentencing as of, let's say, the beginning of November. The summary of the advisory computation had been submitted November 10, so at the time you filed your November motion to set the hearing date, nothing else had to happen in preparation. Correct. And regarding the prejudice, to your language is Kishwa, which I understand is a language of his indigenous people in Ecuador. He has learned to speak Spanish. He was being held in Porter County Jail, and then he was transferred to Kankakee, the old jail. I don't know if you've had the pleasure, but it's not the nicest facility. And again, to communicate with him, I had to get an interpreter to go down there and explain. Barker v. Wingo says that one reason to have a speedy sentencing hearing, I don't know if they use that term, but is to reduce anxiety and concern for the accused. Well, in this case, we've got six months of waiting, and also the effect that his asylum hearing is being delayed for that period of time, which I believe does create significant prejudice to Mr. Yupiup. I don't have to think further. All right, fine. I'll let you have a little rebuttal if you need it. Mr. Holler. Good morning, Your Honors, and may it please the court. The district court did not violate Mr. Yupiup's due process rights by sentencing him eight months after he pleaded guilty. And at any rate, he was not entitled to discharge, which was the sole reason. Does that mean that the district court's statement that Mr. Yupiup could not presume he would not get a sentence within the guidelines may have influenced the court to make that prediction come true? Well, I would certainly hope not, Judge Rovner. I don't think there's anything on this record that suggests that. The defendant hasn't appealed his sentence and argued there was any procedural or substantive unreasonableness at the sentencing hearing itself. The issue here has solely been a speedy sentencing claim. So I think to the extent, I think if there had been any suggestion of that, I would have expected the defendant to have preserved that argument in some way. It is very disturbing to think that the judge's winter living arrangements drove the date of this sentence. I mean, it's already, he is, if that's the position the asylum people are taking, then they run their own shop. You know, that's their position. Maybe they want sentences to be fully served before they assume authority over the individual person. The silence in this record of Judge Moody's reason for pushing it off that far is disturbing. Judge Wood, I agree that there are ambiguities in this record. But that said, I think if one looks at the timeline, the defendant filed a motion to schedule the sentencing in November. He filed the motion. He didn't invoke his due process rights. He didn't invoke his speedy sentencing rights. He didn't invoke Rule 32. He didn't make any of those claims at that time. Then the district court judge, three months later, sets his sentencing when he sets the sentencing. I don't think that anyone should read this record and assume that the district court judge was indifferent at all to any of these concerns. I mean, the district court's order says, when he sets the sentencing, when he looks at the motion, he says, we're going to set this on May 10th and no extensions will be granted absent extraordinary circumstances. We are going to do the sentencing on that date. The government can't have more time, which I think suggests the court is at least considering a time-served sentence at that point in time. Yeah, but you know, it's so troublesome. This was a short range to begin with, the 15 to 21 months. You know, certainly if this person had been looking at, you know, 120 months, this would all seem different. But merely by waiting from, let's even say, February 11, when the district court decides to set the hearing on May 10, every month matters in these short ranges. It may matter, and it may have mattered. And perhaps the district court judge, perhaps this would not be considered best practices, but the question here isn't whether this is best practices, but first whether there is a due process violation at all, which the government would submit. This isn't something that, you know, violates fundamental conceptions of justice. That's the question from Lovasco and Merian, is does it violate fundamental conceptions of justice. There are instances, they don't happen often, thankfully, but there certainly are instances where defendants end up being detained and end up receiving sentences that are less than they ultimately receive. I mean, even in the context of the Johnson cases or those things, there are defendants who have over-served time. And it may be that ultimately a defendant could end up with a term of sentence that he has over-served, which the Bureau of Prisons can and does account for. But in Mr. Yupa Yupa's case, that's basically meaningless. You know, there's nothing anybody can do about this. And he's been deprived of the option of a below-guideline sentence below what the clock, you know, the 12 and a half months basically that he had been in custody. It actually is slightly less than 12 months. The defendant doesn't get any credit for time served in immigration custody before he's charged on May 23rd to May 10th. It's slightly under a year. So, a 12-month, an exactly 12-month sentence, if that's what he had gotten, he would have had 13 more days to serve. Ultimately, he gets an 18-month sentence. He served his criminal sentence until September 3rd. So, the question here is, what is the remedy? I mean, as we've pointed out, you can credit over-served time. There are, unfortunately, defendants who commit these crimes illegally and do return illegally. There is also the possibility in this case that the defendant could prevail on his asylum claim. Like Mr. Schlesinger, I have no idea what the merits of that claim are. If the defendant succeeds in his asylum claim, he will, under the district court's judgment, be placed on a term of supervised release for two years. So, if the court thought that there was a due process violation here, a potential remedy could be a reduction of the charge, vacating the conviction that he has validly pled guilty to. And no court has ever found, even for the cases that we've cited, 7-year, over 10-year delays in sentencing, every court has said, vacating the conviction is an improper remedy. That's the only remedy that the defendant sought in the district court, and that is not an appropriate remedy even for a due process violation. In fact, in Betterman, the court said dismissal would be an unjustified windfall. Right, and it is the thing, even if you're going to apply Barker against Wingo by analogy, that's speedy trial, so you can certainly do something about trial, but once you've been convicted, I take the point, that's different. Right, and Your Honor, in the Sanders case from the Sixth Circuit, the district judge was dragging its feet on sentencing, and the government had to file a mandamus petition to essentially get the district court to sentence the defendant. Now, I'm not making any suggestion of whether that would have been the remedy, whether that would have been appropriate here, but in a case where there really is a speedy sentencing violation, and a potential that really the only appropriate remedy of taking time off of the prison term is going to evaporate, I think that's probably the way that this should be resolved, not through a later direct appeal and seeking the kind of remedy the defendant is here. So under those circumstances, for the reasons we've stated, we don't believe that there was a due process violation in the first place, but at any rate, the remedies the defendant seeks at this point are simply not appropriate, and for those reasons, we would ask that on these facts that the judgment be affirmed. If the court has no further questions, I would give back the balance of my time. I see none, so thank you very much. Mr. Schlesinger, I'll give you a final minute. I don't think I'll need it. Regarding the remedy sought, I do believe that dismissal of the charges would be appropriate in light of the fact that the conviction will obviously have additional consequences for Mr. Yupi Yupa going forward with his immigration, so that is unnecessarily prejudicial. I agree with Mr. Howler that that has never been done, but this court can structure what it believes to be an appropriate remedy. I do respect the need, well maybe not need, but the position of senior judge and the fact that the benefit of the experience and wisdom can benefit the justice system overall, but when it interferes in my motion for sentencing in November, I did also pose the alternative of having another judge do the sentencing. This was not a complicated case. It was a 15 to 21 month guideline case. Someone else could have done the sentencing, and we believe that that would have been appropriate. We do believe that the delay violated Mr. Yupi Yupa's due process rights. Thank you. All right. Thank you very much, and you were appointed, I believe, and we thank you for your service. Thanks as well to the government.